IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE M. ROSKOS, | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO.: |
| | : |
| v. | : |
| | : JURY TRIAL DEMANDED |
| SCRANTON SCHOOL DISTRICT | : |
| And JOHN CASTROVINCI, | : |
| | : |
| Defendants. | : |

## COMPLAINT

Plaintiff George M. Roskos, by and through his undersigned counsel, hereby complains of the above-named Defendants as follows:

### I. THE PARTIES

1. Plaintiff George M. Roskos ("Plaintiff") is a competent adult individual residing at 731 Harrison Avenue, Scranton, Pennsylvania 18510.

2. Defendant Scranton School District ("District") is a school district duly organized and existing under the laws of the Commonwealth of Pennsylvania with a business address of 425 North Washington Avenue, Scranton, Pennsylvania 18503.

3. Defendant John Castrovinci ("Castrovinci") is a competent adult individual who, at all times relevant hereto, served as the Director of Human Resources of the District. Defendant Castrovinci maintains an office at 425 North

Washington Avenue, Scranton, Pennsylvania 18503.  At all times relevant hereto, Defendant Castrovinci acted in both his individual and official capacity and as a state actor under color of state law.  Defendant Castrovinci is a "person" as that term is defined in 42 U.S.C. § 1983.  Moreover, in his capacity as the Director of Human Resources, Defendant Castrovinci at all times acted as a policymaker of the District.

4. Defendants District and Castrovinci shall be referred to herein collectively as "Defendants".

## II.   JURISDICTION AND VENUE

5. This Court possesses jurisdiction over the claims set forth herein pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, *inter alia*, a substantial part of the events and/or omissions giving rise to the claims set forth herein occurred in this district.

## III.   FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7. At all times relevant hereto, Plaintiff served as a tenured professional employee of the District and member of the bargaining unit subject to the terms and conditions of the Collective Bargaining Agreement ("CBA") between the District and the Scranton Federation of Teachers ("SFT"), a true and correct copy of which is attached hereto and incorporated herein by reference as Exhibit "A".

8. Plaintiff served as tenured professional employee and member of said bargaining unit since approximately August/September of 2003.

9. As a member of the bargaining unit, Plaintiff also formerly served as the Head Varsity Baseball Coach at West Scranton High School, a position contractually bargained for and included in the CBA between the District and SFT.

10. Plaintiff served in that capacity since March of 2012.

11. Plaintiff holds certifications in Health and Physical Education, and has taught classes in those certifications since joining the District.

12. At the time of the events complained of herein, Plaintiff taught at West Scranton High School ("WSHS").

13. On or about April 30, 2018, the District summoned Plaintiff to a meeting and suspended him with pay as the Head Varsity Baseball Coach without any facts or details whatsoever.

14. When asked by Plaintiff why he was suspended, Plaintiff was simply informed: "Based on complaints".

15. At no time did anyone else from District Administration offer any facts or details to support any of the alleged "complaints" cited to justify Plaintiff's untimely suspension.

16. Plaintiff then appeared the following day, May 1, 2018, for a subsequent meeting at the District Administration Building as instructed.

17. At no time between the conclusion of the meeting on April 30, 2018 and the meeting on May 1, 2018 did any member of the District Administration contact or otherwise communicate with Plaintiff.

18. In fact, other than the conclusory and general statement made by District representatives to Plaintiff, Plaintiff never received any verbal and/or written notice regarding the purpose of the meeting on May 1, 2018.

19. No specific purpose for the meeting was given to Plaintiff as the meeting progressed.

20. Rather, the then Superintendent of the District – in a disjointed and rambling fashion – began speaking generally on a myriad of past and present issues related to Plaintiff's coaching position.

21. While the former Superintendent raised these general issues, at no time did she offer any facts, details or any explanation of the evidence to support any of her generalized and rambling statements.

22. Instead, she concluded the meeting by reaffirming Plaintiff's suspension with pay pending an investigation.

23. On June 5, 2018, Plaintiff was given a performance evaluation by the District for his role as head baseball coach during the Spring 2018 PIAA sports season.

24. Plaintiff earned an overall evaluation of "Satisfactory", and earned ratings of "Excellent" in seven (7) of twenty (20) categories, "Above Average" in nine (9) of twenty (20) categories, and "Average" in four (4) of twenty (20) categories.

25. Additionally, the evaluator commented positively with regard to Plaintiff's ability to develop team enthusiasm, camaraderie, behavior and sportsmanship.

26. Despite this positive and satisfactory evaluation, Plaintiff received a letter from the District dated July 17, 2018, suspending Plaintiff as the Varsity Baseball Coach, this time without pay, for the entire 2018/2019 school year.

27. In addition to Plaintiff's suspension without pay, the District also imposed a series of other punitive, petty and/or unreasonable conditions, all of which are itemized in the aforementioned suspension letter.

28. The District suspended Plaintiff without pay without any written or oral notice of the charges against him; without any adequate explanation of the evidence to substantiate said charges; and without any adequate opportunity to present his side of the story, all in violation of Plaintiff's well-established and protected procedural due process rights under the Fourteenth Amendment to the United States Constitution.

29. Thus, Plaintiff initiated a civil rights suit against the District and its former Superintendent on or about November 13, 2018.

30. Of particular relevance here, the parties eventually settled that lawsuit on or about April 1, 2019 (hereinafter the "Settlement").

31. As part of the aforesaid Settlement, Plaintiff resigned from his position as the head Varsity Baseball Coach for WSHS.

32. Just over a year later, Plaintiff received a Written Warning Letter from Defendants dated June 9, 2020, wherein the District accused Plaintiff of violating the terms of his Settlement by presenting awards to certain student athletes in his capacity as a private citizen, a task he did even before becoming the coach at WSHS.

33. The letter received by Plaintiff contained nothing other than mere generalities and unsupported legal conclusions.

34. Thus, Plaintiff -- through his undersigned counsel -- sent a letter to the Defendant Castrovinci dated June 19, 2020 inviting the District to provide some form of factual analysis as to how any actions allegedly taken by Plaintiff constituted a violation of the underlying Settlement.

35. In that same letter, Plaintiff also took the opportunity to educate Defendants on the origins and background of his involvement with the Petillo and

Brudnicki awards which, for some reason, were now the subject of the District's ire.

36. More specifically, Plaintiff made clear that he established and paid for these awards in his personal capacity both before and during his head coaching tenure to honor friends and mentors that impacted his life.

37. They were not awards that are or have been traditionally or historically presented to and/or paid for by the District and/or the West Scranton Baseball program.

38. Following his resignation as the head coach, Plaintiff made it further clear to the District that he continued to administer and pay for these awards in his personal capacity just as he did before assuming the head coaching positon in 2012.

39. As with all other awards given by independent persons, organizations and/or groups who are not affiliated with the District, Plaintiff sought and received input from the head coach as to potential recipients for the awards.

40. Again, these awards were never given or presented by the District or its sports programs.

41. In fact, the actions taken by Plaintiff were no different than other awards given to other District students/athletes that same year, which were also

paid for and presented by private individuals and/or civic organization unaffiliated with the District.

42. In short, Defendants engaged in the unprecedented and unlawful act of disciplining an employee for actions taken as a private citizen.

43. Defendants' disdain for Plaintiff was so great that they would rather deprive their student-athletes of receiving the honor and recognition of these annual awards just because they were presented and paid for by Plaintiff.

44. And Defendants tried to hide behind the terms of its Settlement Agreement with Plaintiff as some sort of justification for its shameful actions.

45. Not surprisingly, Defendants never responded to Plaintiff's letter, nor did they ever explain to him how or why his actions allegedly violated the Settlement.

46. Instead, Defendants took action against Plaintiff again the following year for presenting the same awards to student-athletes.

47. To that end, on or about May 13, 2021, Plaintiff received an email from the principal of WSHS, Robert DeLuca, scheduling a Zoom meeting the following day with him and Defendant Castrovinci.

48. The email simply stated that the purpose of the meeting was "to discuss you distributing awards for the baseball team again this year".

49. Plaintiff, once again, through his legal counsel, responded by renewing his position on the matter, and by reminding Defendant Castrovinci that he still has not provided Plaintiff with any substantive response or justification for the District's position, despite being invited to do so a year earlier.

50. It is believed and therefore averred that this prompted Defendants to postpone the Zoom meeting on May 14, 2021.

51. Thereafter, on or about May 25, 2021, Defendant Castrovicni sent Plaintiff another email to reschedule the meeting.

52. This time, however, the email specifically stated that the meeting would be a "Loudermill Hearing", which would be held in person in the Alumni Room at WSHS on June 1, 2021.

53. The email also included an attached letter from Defendant Castrovinci, which also expressly confirmed that the meeting would be a "Loudermill Hearing", a true and correct copy of which is attached hereto and incorporated herein by reference as Exhibit "B.

54. The notice of Loudermill hearing issued to Plaintiff by Defendant Castrovinci was deficient in multiple respects.

55. The notice did not include a description of the formal charges being levied against Plaintiff; the notice did not provide a summary explanation of the

District's evidence against Plaintiff; and the notice did not indicate that a suspension was being contemplated by the District. (See Exhibit "B").

56. Instead, the notice simply stated that: "The administration is concerned with your conduct and has scheduled a meeting to discuss these matters with you on Tuesday, June 1, 2021 at 1:30 P.M.". (Id.)

57. Defendants eventually continued Plaintiff's "Loudermill Hearing" to June 7, 2021.

58. Plaintiff appeared at the Loudermill Hearing on June 7, 2021 as instructed with two (2) SFT representatives: Rosemary Boland and Jason O'Hearn.

59. Present at the Loudermill Hearing from the District were Mr. DeLuca and Defendant Castrovinci.

60. Miss. Boland opened the meeting by asking if the meeting could be recorded.

61. That request was denied by Defendant Castrovinci.

62. Miss. Boland then gave Defendant Castrovinci a copy of the aforementioned June 19, 2020 letter wherein Plaintiff's counsel outlined in detail Plaintiff's position as it related to the distribution of the student-athlete awards in question.

63. Defendant did not respond or otherwise comment on the content of the letter.

64. Instead, Defendant Castrovinci started talking about how Plaintiff's presentation of the awards was a cause for concern by the District for Title IX violations.

65. In fact, Title IX was the focus of Defendant Castrovinci's talking points for at least several minutes during the Loudermill Hearing.

66. Significantly, Defendant Castrovinci's Title IX accusations against Plaintiff came out of nowhere.

67. At no time prior to the June 7, 2021 Loudermill Hearing did Defendant Castrovinci or anyone else from the District ever raise Title IX as an issue in connection with Plaintiff's presentation of the awards in question.

68. More importantly, Title IX was not included or in any way referenced by Defendant Castrovinci in the Loudermill Hearing Notice issued to Plaintiff on May 25, 2021. (See Exhibit "B").

69. To make matters worse, other than generally referencing and talking about Title IX, Defendant Castrovinci did not even attempt to explain how Title IX applied to Plaintiff's current situation, let alone provide any explanation of the specific evidence the District had against Plaintiff to support any purported violation of Title IX by Plaintiff.

70. Given that the Loudermill Hearing notice issued by the District included a reference to a concern about whether Plaintiff adhered to the terms of

his Grievance and/or Federal Court Settlement, Plaintiff asked Defendant Castrovinci directly to tell him which provisions of the Grievance Settlement or Federal Court Settlement he allegedly violated, and to provide him with a summary explanation of the District's evidence against him to support the alleged violations.

71. Amazingly, Defendant Castrovinci responded by expressly stating: "We're not going to get into that".

72. Defendant Castovinci then suspended Plaintiff, without pay, effective June 9, 2021, without any further explanation, and told him that a letter would be forthcoming.

73. Defendants suspended Plaintiff without pay without proper notice of the charges being levied against him; without any adequate explanation of the evidence to substantiate said charges; and without any indication that a suspension was being contemplated by the District, all in violation of Plaintiff's well-established and protected procedural due process rights under the Fourteenth Amendment to the United States Constitution.

74. At all times relevant hereto, the actions of Defendants in unlawfully suspending Plaintiff without pay were arbitrary, capricious, irrational, contrary to law and motivated by Defendants' personal animosity and disdain for Plaintiff.

### PLAINTIFF V. DEFENDANTS

### 42 U.S.C. § 1983 – VIOLATION OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

75. The preceding Paragraphs of this Complaint are incorporated herein by reference as if fully set forth herein.

76. The Fourteenth Amendment Due Process Clause prohibits a state actor from depriving any person of life, liberty or property without due process of law.

77. At all times relevant hereto, Plaintiff had a protected property interest in his employment as a tenured professional employee with the District under the Due Process Clause of the Fourteenth Amendment.

78. Plaintiff's protected property interest in his employment was created and arose from the applicable provisions of the CBA, which protects Plaintiff as a member of the bargaining unit from being "disciplined in any manner or discharged without just cause". (See Exhibit "A").

79. Pursuant to these express provisions of the CBA, Plaintiff had more than a unilateral expectation of continued employment with the District. Plaintiff had a clear, legitimate and reasonable expectation and entitlement to said continued employment unless disciplined for just cause.

80. As set forth more fully above, Defendants deprived Plaintiff of his protected property interest under the Loudermill by suspending Plaintiff without pay without proper notice of the charges being levied against him; without any

adequate explanation of the evidence to substantiate said charges; and without any indication that a disciplinary suspension was being contemplated by the District.

81. To this end, it is well-established that public employees such as Plaintiff are entitled to meaningful notice of the specific nature of the charges being levied against them so that the employee is given the opportunity to determine what facts, if any, are within his or her knowledge that might be presented in mitigation of or in denial of the charges.

82. It is also well-established that a public employee such as Plaintiff must be informed of the specific evidence that existed to support each of the charges, and must be given a sufficient explanation of the evidence against him or her regarding each of the charges.

83. Charges that do not contain the requisite description and that simply use boilerplate and general language are not constitutionally sufficient.

84. Moreover, a public employer cannot fail and/or refuse to cite the specific allegations and evidence to support each of the charges, as was the case here.

85. At all times relevant hereto, Defendants' actions were willful, wanton, malicious and taken with a reckless and/or callous disregard for Plaintiff's protected property rights under the Fourteenth Amendment of the United States Constitution.

86. As referenced above, Defendant Castrovinici -- as Director of Human Resources -- at all times acted as a policymaker of the District in unlawfully suspending Plaintiff.

87. It is well-established that municipal liability exists when a claim is predicated upon the actions or inactions of a municipality's duly authorized policymakers.

88. To this end, the claim advanced against Defendant District herein is not based on a theory of Respondeat Superior.  Rather, said claim is based on the unlawful and unconstitutional acts committed by Defendant Castrovinci in his capacity as a policymaker for the District as aforesaid.

89. As a direct and proximate result of Defendants' actions as aforesaid, Plaintiff has suffered a deprivation of his guaranteed right to due process under the Fourteenth Amendment of the United States Constitution.

90. As a further direct and proximate result of Defendants' actions as aforesaid, Plaintiff sustained economic loss, as well as mental anguish, humiliation and/or emotional distress.

WHEREFORE, Plaintiff George M. Roskos demands judgment in his favor and against Defendants, jointly and/or severally, together with compensatory damages, punitive damages (against Defendant Castrovinci only), interest, costs of

suit, attorneys' fees, and such other and further relief to which this Court deems just and proper.

                Respectfully submitted,

                TUNIS LAW

                By: /s/ Frank J. Tunis, Jr.
                     Frank J. Tunis, Jr.
                     R347 Main Street
                     Dickson City, PA 18519
                     (570) 954-9363
                     (570) 341-7558 – fax
                     gunnytun@yahoo.com

Dated: June 10, 2021               Attorney for Plaintiff